FILED
Feb 07, 2019
02:22 PM(ET)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT CHATTANOOGA

| | |
|---|---|
| Syvonia Armstrong,<br>　　　　Employee,<br>v.<br>Chattanooga Billiard Club, Inc.,<br>　　　　Employer,<br>And<br>Eastern Alliance Insurance Co.,<br>　　　　Carrier. | )　Docket No.: 2018-01-0006<br>)<br>)<br>)　State File No.: 927-2018<br>)<br>)<br>)<br>)　Judge Thomas Wyatt<br>)<br>) |

## EXPEDITED HEARING ORDER DENYING MEDICAL BENEFITS FOR DENTAL CONDITIONS

This matter came before the Court on February 6, 2019, for an Expedited Hearing. The primary issue is whether Ms. Armstrong came forward with evidence that she would likely prevail at a hearing on the merits that her alleged dental injuries arose primarily out of and in the course and scope of her employment. For the reasons below, the Court holds she did not.

### History of Claim

Ms. Armstrong worked as a bartender/shift leader for Chattanooga Billiards Club's (CBC's) restaurant and bar. On December 12, 2017, she received an electrical shock while changing a filter on a dishwasher. She stated she felt a sensation like bees stinging her face and burning inside her mouth and on her right arm. She notified CBC's owner of the incident, but declined the owner's offer to send her for immediate treatment.

Later that evening, Ms. Armstrong developed swollen and burned lips, burns inside her mouth, pain in her left ear, and pain behind her left eye. She sought emergent care without authorization and reported that she had "contact with electrical wire . . . at the right wrist" while "working on a dishwasher." The emergency-room doctor diagnosed an "electric shock" and discharged her without treatment.

1

Ms. Armstrong later sought medical benefits under workers' compensation.[1] CBC referred her to its insurance broker, to whom Ms. Armstrong reported chipped teeth and that an electrical shock "blew out her fillings." She testified the broker allowed her to see a dentist, and she saw Dr. Drew Shabo on December 18.[2] Dr. Shabo's examination revealed several decayed and chipped teeth for which he recommended veneers. On the issue of causation, Dr. Shabo's office note states, "there's no way to know whether the electric current caused the fracturing of the teeth" but "it is possible that the amalgam fillings acted [as a] conductor and caused them to fracture but he hasn't seen her before to know."

CBC later provided Ms. Armstrong a panel of walk-in clinics from which she selected American Family Care (AFC). She saw physicians at AFC on January 9 and 12, 2018, who diagnosed burns of the mouth and pharynx and referred her to an ENT. A doctor who saw Ms. Armstrong at AFC on the second visit wrote that she became irate during the visit, told him she did not want diagnoses of jaw pain, ear pain or headaches, and threatened to sue if CBC did not pay for her treatment under workers' compensation.[3] Both AFC physicians released her to return to work without restrictions.

Ms. Armstrong selected Dr. David Fortune from a panel for the ENT referral. Dr. Fortune concluded the slight abnormalities on a hearing test were not those normally seen with electrical shock injuries. He released her with ointment to treat a burn of the left external ear canal and assigned no impairment or work restrictions.

CBC also offered Ms. Armstrong a panel of dentists. She refused to select a dentist for authorized care, opting instead to pursue an order requiring CBC to pay for Dr. Shabo's recommended care. During the hearing, she stated she made this decision because she had a lot going on in her life and did not want to encounter the inconvenience of seeing a new dentist.

CBC also had Ms. Armstrong examined by oral surgeon Dr. Richard L. Johnson. He took dental x-rays revealing numerous decayed teeth, intact fillings, and chipping consistent with normal wear. On causation, he stated that "I do not feel there is any dental disability from [the electrical shock]."

---

[1] Ms. Armstrong asked CBC to have the dishwasher inspected. CBC did so, once by a repairman and then by an electrician. Ms. Armstrong disagreed with the findings that nothing was wrong with the dishwasher and refused to use the dishwasher. CBC terminated her for this refusal and previous misconduct, including tardiness.

[2] CBC lodged a hearsay objection to Ms. Armstrong's testimony about the broker's authorization. Upon consideration of Ms. Armstrong's testimony that she relied on the broker's statement in going to see Dr. Shabo, the Court overruled the objection under the state-of-mind exception to the hearsay rule.

[3] Ms. Armstrong testified she never saw the physician who wrote this.

2

Ms. Armstrong then obtained letters bearing Dr. Shabo's signature that addressed causation. A September 5 letter stated: "Dr. Shabo concluded that the work that needs to be done to save her teeth could very well be needed due to the electrical shock the patient experienced." A September 19 letter stated: "Dr. Shabo concluded that, it is more likely than not, to a reasonable degree of medical certainty, the described injury 'electrical shock' in dental notes was the primary cause of the need for dental treatment."

Ms. Armstrong filed a Petition for Benefit Determination seeking medical benefits and temporary and permanent disability benefits. At the Expedited Hearing, she stated "I only want my teeth fixed. I did not have chipped teeth before." CBC contended that Ms. Armstrong failed to prove the essential elements of her claim, including causation and the reasonableness, necessity and work-relatedness of requested treatment.

### Findings of Fact and Conclusions of Law

At an expedited hearing, Ms. Armstrong must provide sufficient evidence from which the Court can determine she is likely to prevail at a hearing on the merits. *McCord v. Advantage Human Resourcing,* 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). Ms. Armstrong contends her dental problems arose primarily from the electrical shock at CBC and relies on the opinions stated in Dr. Shabo's letters in support of her claim. CBC argues that Dr. Shabo's opinions are unreliable because he changed them over the course of time. It asserts that the Court should give greater weight to the opinion of oral surgeon Dr. Johnson, who concluded that Ms. Armstrong's dental conditions were not caused by an electrical shock.

Tennessee Code Annotated section 50-6-102(14) (2018) defines a compensable injury as one "arising primarily out of and in the course and scope of employment." Subsection 50-6-102(14)(C) requires that compensability be shown to "a reasonable degree of medical certainty." Subsection 50-6-102(E) provides that the opinions of treating physicians selected from a panel "shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence."

Here, Dr. Fortune diagnosed Ms. Armstrong with a burn to her left external ear canal and prescribed treatment. Thus, Ms. Armstrong established she would likely prevail at a hearing on the merits regarding treatment for the burn. However, Ms. Armstrong failed to come forward with evidence rebutting Dr. Fortune's opinion that her hearing abnormalities were not related to the electrical shock. Thus, she failed to establish entitlement to medical benefits for her hearing.

The compensability of the dental injuries hinges on the competing causation testimonies of Dr. Shabo and Dr. Johnson. Their opinions stand on equal footing because neither provider was selected from a panel.

3

In considering this issue, the Court notes that Dr. Shabo provided differing causation opinions. In his treatment notes, he stated "there was no way to know whether the electric current caused the fracturing of the teeth." At best, Dr. Shabo stated the connection between the shock and the tooth damage was "possible," but he conceded he would have needed to see Ms. Armstrong before the injury to consider a relationship between the electrical shock and her dental conditions.[4]

The Court finds the inconsistencies between Dr. Shabo's treatment notes and his causation letters make the later opinions unreliable. The Court gives no weight to causation opinions given after Dr. Shabo admitted he had insufficient information—the chance to see Ms. Armstrong's teeth before the shock occurred—to give a valid opinion. Thus, the only reliable causation opinion regarding the dental conditions is that of Dr. Johnson, who concluded the conditions were not related to the electrical shock.

In view of the above, the Court holds Ms. Armstrong did not establish she would likely prevail at a hearing on the merits that her dental conditions arose primarily out of and in the course and scope of employment.

**IT IS, THEREFORE, ORDERED** as follows:

1. CBC shall provide Ms. Armstrong reasonable and necessary medical care from Dr. Fortune for the burn to her left ear canal.

2. Ms. Armstrong's claim for medical benefits for treatment of her dental conditions is denied at this time.

3. This matter is set for a Status Hearing **at 10:30 a.m. Eastern Time on April 30, 2019.** You must call (615) 741-3061 or toll-free at (855) 747-1721 to participate in the Status Hearing. You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.

4. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation**

---

[4] An expert opinion connecting a physical condition to an employee's work must be stated on a more-likely-than-not standard and not on the basis of speculation or possibility. *See* Tenn. Code Ann. § 50-6-102(14)(D).

**within the period of compliance may result in a penalty assessment for non-compliance.**

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov.

**ENTERED February 7, 2019.**

**Judge Thomas Wyatt**
**Court of Workers' Compensation Claims**

## APPENDIX

Exhibits:

1. Affidavit of Syvonia Armstrong
2. Correspondence in unemployment claim and earnings print-out (for identification only)
3. Form from East Tennessee Endodontics (sustained hearsay objection)
4. Bill and Diagnosis Code from David Pifer, O.D. (sustained hearsay objection on the bill; overruled hearsay objection on the diagnosis code because the document was signed by the physician)
5. Medical records of Parkridge East Hospital; American Family Care; Dr. Scott Fortune; Dr. Richard Johnson; and Dr. Drew Shabo; and Tennessee Board of Dentistry disciplinary records on Dr. Drew Shabo. (overruled hearsay objection on the fact the records are copies and not originals; sustained hearsay objection on Dr. Shabo's bill; overruled objection that Dr. Shabo's letters are not admissible upon signature because they are not medical records and he is a dentist and not a doctor)
6. Text of text messages between Ms. Armstrong and CBC's owner
7. CBC disciplinary records and Separation Notice
8. Wage Statement and CBC's print-out of Ms. Armstrong's wages
9. Panels of Physicians
10. Affidavit of Michael Warnack
11. Records of Sauder Electric and affidavit of Alex Westmoreland
12. Records of Auto-Chlor and affidavits of Clay Nelson and David Brockman

Technical record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing

5

4. Notice of Expedited Hearing
5. Motion to Compel IME and to Continue Expedited Hearing
6. Order Allowing IME and Continuing Expedited Hearing
7. Order Scheduling Expedited Hearing
8. Notice of Expedited Hearing
9. Employer's Witness and Exhibit List

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Order was sent to the following recipients by the following methods of service on February 7, 2019.

| Name | Certified Mail | First Class Mail | Email | Service sent to: |
|---|---|---|---|---|
| Syvonia Armstrong, Employee | | X | X | Syvoniamercedes72@gmail.com 2129 Dugan Avenue Chattanooga, TN 37412 |
| Pete Frech, Employer Attorney | | | X | ppfrech@mijs.com jlrusso@mijs.com |

**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov

6



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## EXPEDITED HEARING NOTICE OF APPEAL

Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

**Docket #:** _____

**State File #/YR:** _____

**Employee** _____

v.

**Employer** _____

### Notice

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____ to the Workers' Compensation Appeals

Board. [List the date(s) the order(s) was filed in the court clerk's office]

**Judge** _____

### Statement of the Issues

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

### Additional Information
**Type of Case** [Check the most appropriate item]

☐ Temporary disability benefits
☐ Medical benefits for current injury
☐ Medical benefits under prior order issued by the Court

### List of Parties
**Appellant (Requesting Party):** _____ At Hearing: ☐Employer ☐Employee

Address: _____

Party's Phone: _____ Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Address: _____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ SF#: _____ DOI: _____

## Appellee(s)

**Appellee (Opposing Party):** _____ At Hearing: ☐Employer ☐Employee

Appellee's Address: _____

Appellee's Phone: _____ Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Address: _____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Expedited Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules of Board of Workers' Compensation Appeals on this the _____ day of _____, 20 ___

[Signature of appellant or attorney for appellant]  _____



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____

2. Address: _____

3. Telephone Number: _____

4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | | |
|---|---|---|---|---|
| AFDC | $ _____ | per month | beginning | _____ |
| SSI | $ _____ | per month | beginning | _____ |
| Retirement | $ _____ | per month | beginning | _____ |
| Disability | $ _____ | per month | beginning | _____ |
| Unemployment | $ _____ | per month | beginning | _____ |
| Worker's Comp. | $ _____ | per month | beginning | _____ |
| Other | $ _____ | per month | beginning | _____ |

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental $ _____ per month

Groceries        $ _____ per month    Telephone        $ _____ per month

Electricity      $ _____ per month    School Supplies $ _____ per month

Water            $ _____ per month    Clothing         $ _____ per month

Gas              $ _____ per month    Child Care       $ _____ per month

Transportation   $ _____ per month    Child Support    $ _____ per month

Car              $_____ per month

Other            $ _____ per month (describe: _____ )

10. Assets:

Automobile               $ _____    (FMV) _____

Checking/Savings Acct. $ _____

House                    $ _____    (FMV) _____

Other                    $ _____    Describe: _____

11. My debts are:

Amount Owed                    To Whom

_____        _____

_____        _____

_____        _____

_____        _____

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires: _____